# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

DION TODD GRAHAM,

    Plaintiff,

    v.

GLYNN COUNTY SCHOOLS,

    Defendant.

2:23-CV-112

## ORDER

Before the Court is Defendant Glynn County Schools' motion to partially dismiss Plaintiff Dion Todd Graham's complaint. Dkt. No. 11. The parties have fully briefed the motion, dkt. nos. 11, 16, 20, and participated in oral argument before the Court, dkt. no. 26. Thus, the motion is ripe for review. For the reasons stated below, Defendant Glynn County Schools' motion for partial dismissal is **GRANTED in part** and **DENIED in part.**

## BACKGROUND

This case arises from Plaintiff Dion Todd Graham's non-selection for multiple employment positions in the Glynn County school district. Dkt. No. 9. Plaintiff alleges that Glynn County Schools discriminated and retaliated against him because of his race. Id. Defendant argues that partial dismissal is warranted because (1) Plaintiff failed to adequately plead causation and

(2) some of his claims are barred by the applicable statute of limitations. Dkt. No. 11.

Plaintiff is an African American man and a current employee of Defendant Glynn County Schools. Dkt. No. 9 ¶¶ 9-10. Plaintiff began working for the school district in 2014. Id. ¶ 10. Until October 2021, he worked as a middle school special education teacher. Id. ¶ 11. Over the years, Plaintiff applied for many roles in the school system but has repeatedly been non-selected. Id. ¶¶ 26, 43-44, 47-48, 51-52.

As part of its hiring process, Glynn County Schools uses a five-tiered certification system created by the Georgia Professional Standards Commission. Id. ¶ 12. An applicant's tier depends on whether the individual holds or is eligible for Georgia Educational Leadership ("GEL") Certification. Id. ¶ 14. An applicant's tier also affects eligibility for positions in the school system. Id. ¶¶ 15-16. Plaintiff applied for three types of positions: principal, assistant principal, and instructional coach. Id. ¶¶ 43, 47, 51. To be eligible for a principal position, the applicant must have Tier II GEL Certification or enroll in a Tier II certification program after hiring. Id. ¶ 14. To be eligible for an assistant principal or instructional coach position, the applicant must have Tier I certification or be enrolled in a Tier I certification program. Id. ¶¶ 19, 22. Plaintiff has held Tier II GEL certification since 2016. Id. ¶ 13.

2

At oral argument, Defendant conceded that Plaintiff held the requisite level of certification for all three positions.

Prior to filing this case, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Glynn County Schools on August 3, 2020. Id. ¶ 25. He alleged "race-based discrimination and retaliation as a continuing violation." Id. "Specifically, Plaintiff alleged he had been non-selected from numerous roles based on previous EEOC Filings from 2018 and 2019, and based on his race from February 5, 2020, onward." Id. ¶ 26. Defendant responded to Plaintiff's EEOC charge in October 2020, denying his allegations. Id. ¶ 30. Plaintiff submitted his rebuttal to the EEOC on June 1, 2021. Id. ¶ 35.

As the EEOC investigated Plaintiff's charge, he continued to apply and be non-selected for positions in the school district. Id. ¶ 29. Between August and November 2020, Plaintiff was non-selected for multiple positions. Id. ¶¶ 43, 47, 51. On January 27, 2021, he submitted a supplemental filing to the EEOC outlining these non-selections. Id. ¶ 31. Between January and April 2021, Plaintiff was non-selected for even more positions. Id. ¶¶ 43, 47, 51. On May 10, 2021, Plaintiff submitted a second supplemental filing to the EEOC outlining these non-selections. Id. ¶ 33. On May 11, 2021, Plaintiff was non-selected for three more positions. Id. ¶¶ 43, 47, 51. Plaintiff submitted a rebuttal to the EEOC on

3

June 1, 2021. Id. ¶ 35. In June and July 2021, Plaintiff was non-selected for additional positions. Id. ¶¶ 43, 47, 51. On January 25, 2022, he submitted a third supplemental filing to the EEOC outlining these non-selections. Id. ¶ 38. Between January 2022 and March 2023, Plaintiff was non-selected for more positions. Id. ¶¶ 43, 47, 51. On June 2, 2023, the EEOC issued a determination counseling letter. Id. ¶ 40. Plaintiff responded to this letter on June 21, 2023, with supplemental information and documentation supporting his claims. Id. ¶ 41. According to his amended complaint, "Plaintiff received his Notice of Right to Sue on July 5, 2023, covering the investigation of racial discrimination and retaliation claims from February 5, 2020, through the charge closure on July 5, 2023." Id. ¶ 42.

From February 2020 to February 2023, Plaintiff applied for nine principal positions, twenty-eight assistant principal positions, and six instructional coach positions. Id. ¶¶ 43, 47, 51. Plaintiff claims he was qualified for each position "based on his demonstrated requisite experience, GEL Certification, and Tier II Educational Leadership credentials." Id. ¶¶ 45, 49, 53. He was not selected for any of these positions. Id. ¶¶ 44, 48, 52.

Plaintiff claims that lesser-qualified individuals were hired for positions instead of him. Id. ¶¶ 46, 50, 54. In his amended complaint, he provides charts of individuals who were selected for positions and includes their race and whether they were qualified

4

for the position. Id. According to Plaintiff's charts, most individuals selected over him were unqualified. Id.

Plaintiff subsequently filed this case, claiming violations of Title VII and 42 U.S.C. § 1981. Id. Under both causes of action, he alleges race discrimination and retaliation by non-selection. Id. Defendant Glynn County Schools now moves to partially dismiss Plaintiff's amended complaint. Dkt. No. 11.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79.

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Iqbal, 556 U.S. at 678. The Court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Lastly, exhibits attached to pleadings become part of a pleading. Fed. R. Civ. P. 10(c). Consequently, a court may consider documents attached to a complaint in resolving a motion to dismiss without converting the motion to one for summary judgment. Taylor v. Appleton, 30 F.3d 1365, 1368 n.3 (11th Cir. 1994).

## DISCUSSION

Defendant moves for partial dismissal on two grounds.[1] Dkt. No. 11 at 3. First, it argues that Plaintiff failed "to plead facts that show a causal connection between protected conduct and adverse employment action" for his retaliation claims—Counts II and IV. Id. And second, Defendant argues that Plaintiff's 42 U.S.C. § 1981 claims—Counts III and IV—are partly time-barred by the applicable two-year statute of limitations. Id.

## I.  Plaintiff's Title VII Retaliation Claim

### A. An Overview of Title VII

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

---

[1] Defendant did not move for partial dismissal on Count I of the amended complaint. Dkt. No. 11.

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Generally, discrimination in the Title VII context occurs when an employer intentionally treats an employee worse than other similarly situated employees." Lange v. Houston Cnty., 101 F.4th 793, 798 (11th Cir. 2024) (citing Bostock v. Clayton Cnty., 590 U.S. 644, 657–58 (2020)).

In Title VII cases, courts apply "the now-familiar three-part burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Lewis v. City of Union City, Ga., 918 F.3d 1213, 1217 (11th Cir. 2019). Under this framework, the plaintiff has the initial burden of establishing his prima facie discrimination case. Id. To do this, a plaintiff must prove: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the plaintiff's protected activity. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). The plaintiff must also prove that he was treated differently than another similarly situated individual, also known as a comparator. Lewis, 918 F.3d at 1217 (citations omitted). If the plaintiff successfully establishes his prima facie case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its actions." Id. at 1221

(citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). If the defendant carries this burden, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that 'merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination.'" Id. (alterations adopted) (quoting Burdine, 450 U.S. at 253).

"Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013) (citation omitted); see also Babb v. Sec'y, Dep't of Veterans Affairs, 992 F.3d 1193, 1202-03 (11th Cir. 2021). "To prove a causal connection for a retaliation claim, a plaintiff need only demonstrate 'that the protected activity and the adverse action were not wholly unrelated.'" Debe v. State Farm Mut. Auto Ins., 860 F. App'x 637, 639 (11th Cir. 2021) (quoting Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)). The causation element must be construed broadly. See Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) ("The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" (quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998))). "The plaintiff must generally establish that the

employer was actually aware of the protected expression at the time it took the adverse employment action." Debe, 860 F. App'x at 639 (citing Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997)). "[A]t a bare minimum, the protected conduct must have preceded the adverse employment action, and the decision-maker must have been aware of the protected conduct at the time he or she took the adverse employment action." Rogers v. Shinseki, No. 1:12-CV-194, 2014 WL 1093147, at *5 (S.D. Ga. Mar. 18, 2014) (citing McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008)).

A plaintiff can establish a causal connection by showing a close temporal proximity between the employer's discovery of the protected activity and the adverse action. Id. (citation omitted). "[T]emporal proximity must be 'very close.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citations omitted). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). A delay of three months or longer, without additional evidence, cannot establish causation. See id. at 1221 (finding that a three-month temporal proximity could not establish a causal connection); Debe, 860 F. App'x at 639 ("A three-to-four-month delay is too long." (citation omitted)); Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity

10

between the statutorily protected expression and the adverse employment action is not enough." (citations omitted)). On the other hand, "a one-month gap may satisfy the test." Debe, 860 F. App'x at 639–40 (citing Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-01 (11th Cir. 1986)).

While many of the cases imposing the above temporal proximity requirements involved motions for summary judgment, the same restrictions apply at the motion to dismiss stage. See, e.g., Gilliam v. U.S. Dep't of Veterans Affairs, 822 F. App'x 985, 990 (11th Cir. 2020) (affirming the district court's grant of a motion to dismiss because "the lapse of three months between [the employer's] alleged discovery of [the plaintiff's] statutorily protected expression and the adverse employment action is too long to permit an inference of causation based on temporal proximity alone"); Henderson v. City of Birmingham, 826 F. App'x 736, 741-43 (11th Cir. 2020) (affirming the grant of a motion to dismiss because an "extensive passage of time, without more, [was] not enough to satisfy Title VII's causation requirement" (citation omitted)); Bolden v. S.A.B.E., No. 6:15-CV-84, 2016 WL 4030243, at *3 (S.D. Ga. July 26, 2016) ("To survive a motion to dismiss, a plaintiff is only required to allege that the Defendant knew of the protected activity and 'that there was a close temporal proximity between this awareness and the adverse . . . action.' If there is a significant time gap, such as more than three months,

11

between the protected activity and the adverse action, a plaintiff must allege additional facts that demonstrate a causal connection." (quoting Higdon, 393 F.3d at 1220)).

"[P]laintiffs are not required to set out a prima facie case in a complaint because the prima facie case is an 'evidentiary standard, not a pleading requirement.'" McCullough v. Bd. of Regents, 623 F. App'x 980, 982–83 (11th Cir. 2015) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)). "Even if a plaintiff need not plead a prima facie case to survive dismissal, the complaint must satisfy Iqbal's 'plausible on its face' standard, and the allegations must be sufficient to 'raise a right to relief above the speculative level' under Twombly." Id. at 983 (citations omitted). While "a plaintiff need not allege facts sufficient to make out a classic McDonnell Douglas prima facie case," "the allegations must provide enough factual matter (taken as true) to suggest intentional race discrimination." Rives v. Buttigieg, No. 1:21-cv-3023, 2022 WL 4077912, at *3 (N.D. Ga. Jan. 6, 2022). For Title VII claims brought under a temporal proximity theory, a plaintiff must plead sufficient facts that create an inference of causation. Bolden, 2016 WL 4030243, at *3 (citations omitted).

**B. Analysis**

Plaintiff relies on temporal proximity to establish causation. Dkt. Nos. 9, 16. Despite Plaintiff's argument that his

amended complaint alleges additional (non-temporal proximity) facts that establish causation, dkt. no. 16 at 14, he has identified no such facts. Indeed, the amended complaint itself does not allege non-temporal proximity causation facts. Dkt. No. 9. Rather, his amended complaint (and briefing, for that matter) rely solely on temporal proximity to establish causation. Dkt. Nos. 9, 16. As a result, the Court need only analyze whether Plaintiff's amended complaint adequately alleges causation under a theory of temporal proximity.

Several of Plaintiff's non-selection dates cannot establish causation because they preceded his initial EEOC charge. Dkt. No. 27. Plaintiff learned about nine non-selections before he filed his August 3, 2020 EEOC charge.[2] Dkt. No. 9 ¶¶ 46, 50, 54. After the July 31, 2024 hearing, the parties conferred and now agree that these nine non-selections cannot establish a causal connection by temporal proximity. Dkt. No. 27; see also Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n a retaliation case, when an employer contemplates an adverse employment action

---

[2] These nine non-selections are: (1) a principal position on April 14, 2020; (2) a principal position on May 12, 2020; (3) an assistant principal position on March 10, 2020; (4) a second assistant principal position on March 10, 2020; (5) an assistant principal position on May 12, 2020; (6) an assistant principal position on June 9, 2020; (7) a second assistant principal position on June 9, 2020; (8) an instructional coach position on May 12, 2020; and (9) an instructional coach position on June 9, 2020. Dkt. No. 9 ¶¶ 46, 50, 54.

before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." (citations omitted)); Tucker v. Fla. Dep't of Transp., 678 F. App'x 893, 896 (11th Cir. 2017) ("Temporal proximity between the protected activity and the adverse action alone generally cannot show causation when the employer has contemplated the adverse action before the protected activity takes place." (citations omitted)); Quigg v. Thomas Cnty. Sch. Dist., 814 F.3d 1227, 1245 (11th Cir. 2016) (finding that "no triable issue of causation exist[ed]" when a school board took adverse action against the plaintiff before the plaintiff filed an EEOC charge). In accordance with the parties' stipulation and the applicable law, Plaintiff's Title VII retaliation claim regarding these nine non-selections is, therefore, **DISMISSED.**

As to the rest of Plaintiff's non-selections, Glynn County Schools argues that they are too remote in time to allege a causal link. Dkt. No. 11 at 8. Plaintiff argues that he engaged in ongoing protected activity by filing his initial EEOC charge and submitting supplemental filings. Dkt. No. 16 at 4–6. To some extent, both arguments are correct.

Title VII itself lists protected activities. An employer cannot retaliate against an employee because the employee (1) "has opposed any practice made an unlawful employment practice by this

title [42 U.S.C. §§ 2000e–2000e–17]," or (2) "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). The first clause is known as the "opposition clause" and the second as the "participation clause." Crawford v. Metro. Gov't of Nashille & Davidson Cnty., 555 U.S. 271, 274 (2009). Plaintiff argues that his conduct falls under the participation clause. Dkt. No. 16 at 4–5.

Plaintiff's August 3, 2020 EEOC charge certainly qualifies as a protected activity under Title VII. See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has made a charge . . . under this title."). Plaintiff's supplemental filings also qualify under the participation clause, as he assisted or participated in the EEOC investigation. Title VII's participation clause uses "'broad and unequivocal' language that 'is straightforward and expansively written.'" Patterson v. Ga. Pac., LLC, 38 F.4th 1336, 1350 (11th Cir. 2022) (quoting Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997)). "[U]nder the participation clause no employer may retaliate against someone who makes or *supports* a charge of discrimination against any employer." Id. (alteration adopted) (internal quotation marks omitted) (emphasis added) (quoting Flowers v. Colum. Coll. Chi., 397 F.3d 532, 534 (7th Cir. 2005)).

15

Thus, supplemental filings supporting an initial EEOC charge qualify as protected activity. Plaintiff's rebuttal to the EEOC refuting Defendant's arguments—and, thereby, supporting his EEOC charge—also qualifies as a protected practice under the participation clause.

Because Plaintiff's initial EEOC charge, supplemental filings, and rebuttal are protected activities, the operative dates for analyzing temporal proximity are August 3, 2020, January 27, 2021, May 10, 2021, June 1, 2021, January 25, 2022, and June 21, 2023. The Court determines whether a specific adverse employment action meets the temporal proximity requirement by calculating the difference in time between the adverse action date and the most recent protected activity date.

Using the six protected activity dates, many of Plaintiff's non-selections cannot establish causation under a temporal proximity theory. Ten non-selections occurred three or more months after a protected activity date.[3] Dkt. No. 9 ¶¶ 46, 50, 54.

---

[3] These ten non-selections are: (1) a principal position on March 14, 2023 (413 days or one year, one month, and seventeen days after the most recent protected activity date (January 25, 2022)); (2) a second principal position on March 14, 2023 (413 days or one year, one month, and seventeen days after the most recent protected activity date (January 25, 2022)); (3) a third principal position on March 14, 2023 (413 days or one year, one month, and seventeen days after the most recent protected activity date (January 25, 2022)); (4) a fourth principal position on March 14, 2023 (413 days or one year, one month, and seventeen days after the most recent protected activity date (January 25, 2022)); (5) a fifth principal position on March 14, 2023 (413 days or one year, one

Plaintiff's Title VII retaliation claim for these ten non-selections therefore fails as a matter of law. See Higdon, 393 F.3d at 1221. As such, Defendant's motion to dismiss these claims is **GRANTED**.

As alleged, twenty-three non-selections may fall within the "very close" temporal proximity requirement. See Breeden, 532 U.S. at 273. Fifteen non-selections occurred more than two months after the most recent protected activity date but do not exceed the three-month threshold.[4] As to these fifteen non-selections,

_____

month, and seventeen days after the most recent protected activity date (January 25, 2022)); (6) a vice principal position on November 10, 2020 (ninety-nine days or three months and seven days after the most recent protected activity date (August 3, 2020)); (7) a second vice principal position on March 14, 2023 (413 days or one year, one month, and seventeen days after the most recent protected activity date (January 25, 2022)); (8) a third vice principal position on March 14, 2023 (413 days or one year, one month, and seventeen days after the most recent protected activity date (January 25, 2022)); (9) a fourth vice principal position on March 14, 2023 (413 days or one year, one month, and seventeen days after the most recent protected activity date (January 25, 2022)); and (10) a fifth vice principal position on March 14, 2023 (413 days or one year, one month, and seventeen days after the most recent protected activity date (January 25, 2022)). Dkt. No. 9 ¶¶ 46, 50, 54.

[4] These fifteen non-selections are: (1) a vice principal position on April 13, 2021 (seventy-six days or two months and seventeen days after the most recent protected activity date (January 27, 2021)); (2) a second vice principal position on April 13, 2021 (seventy-six days or two months and seventeen days after the most recent protected activity date (January 27, 2021)); (3) a third vice principal position on April 13, 2021 (seventy-six days or two months and seventeen days after the most recent protected activity date (January 27, 2021)); (4) a vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (5) a second vice principal position on April 19, 2021 (eighty-two

Eleventh Circuit "case law addressing causation events that are two months apart consists solely of unpublished opinions with mixed outcomes." Jacomb v. BBVA Compass Bank, 791 F. App'x 120, 124 (11th Cir. 2019); see also Williams v. Waste Mgmt., 411 F. App'x 226, 230 (11th Cir. 2011) ("[T]he two-month gap may be 'closer' in time, but it is not 'very close.'"). Eight of the twenty-three non-selections occurred within or around one month of the most recent

---

days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (6) a third vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (7) a fourth vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (8) a fifth vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (9) a sixth vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (10) a seventh vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (11) an eighth vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (12) a ninth vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (13) a tenth vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); (14) an eleventh vice principal position on April 19, 2021 (eighty-two days or two months and twenty-three days after the most recent protected activity date (January 27, 2021)); and (15) an instructional coach position on April 13, 2021 (seventy-six days or two months and seventeen days after the most recent protected activity date (January 27, 2021)). Dkt. No. 9 ¶¶ 46, 50, 54.

protected activity date.[5] While these twenty-three non-selections may fall within the permissible range to establish temporal proximity, temporal proximity alone cannot establish a causal connection absent actual knowledge by the employer. Rogers, 2014 WL 1093147, at *5. Plaintiff's amended complaint alleges Glynn County Schools' knowledge of only one protected activity: the initial August 3, 2020 EEOC charge.[6] Dkt. No. 9 ¶ 30. Plaintiff does not allege that Defendant was aware of any other protected activities. To state a claim for Title VII retaliation, Plaintiff must allege that the employer was actually aware of the protected

---

[5] These eight non-selections are: (1) a principal position on March 9, 2021 (41 days or one month and ten days after the most recent protected activity date (January 27, 2021)); (2) a second principal position on May 11, 2021 (one day after the most recent protected activity date (May 10, 2021)); (3) a vice principal position on September 8, 2020 (thirty-six days or one month and five days after the most recent protected activity date (August 3, 2020)); (4) a second vice principal position on May 11, 2021 (one day after the most recent protected activity date (May 10, 2021)); (5) a third vice principal position on June 8, 2021 (seven days after the most recent protected activity date (June 1, 2021)); (6) an instructional coach position on May 11, 2021 (one day after the most recent protected activity date (May 10, 2021)); (7) a second instructional coach position on July 13, 2021 (forty-two days or one month and twelve days after the most recent protected activity date (June 1, 2021)); and (8) a third instructional coach position on July 13, 2021 (forty-two days or one month and twelve days after the most recent protected activity date (June 1, 2021)). Dkt. No. 9 ¶¶ 46, 50, 54.

[6] This mirrors EEOC practice. The agency discloses "the first formal document received from the Charging Party, the Charge, and the first formal document received from the Respondent, the Position Statement." EQUAL EMP. OPPORTUNITY COMM'N, QUESTIONS AND ANSWERS FOR CHARGING PARTIES ON EEOC'S NEW POSITION STATEMENT PROCEDURES (last visited Aug. 6, 2024). EEOC does not provide a respondent any other evidence or filings submitted by a charging party. Id.

expression at the time it took the adverse employment action. See Uppal v. Hosp. Corp. of Am., 482 F. App'x 394, 397 (11th Cir. 2012) ("In terms of causation, a plaintiff must show [in a complaint] that the decision-maker was aware of the protected conduct." (citation omitted)); see also Debe, 860 F. App'x at 639. If a plaintiff does not allege that the decision-maker was aware of his protected activity, the plaintiff fails to allege a causal relationship between the protected conduct and the adverse employment action. Uppal, 482 F. App'x at 397.

Plaintiff relies solely on temporal proximity to establish causation and does not allege additional facts that could be considered circumstantial evidence of Defendant's awareness of his protected activities. Further, the amended complaint alleges Defendant's knowledge of only one instance of protected activity. Only one non-selection qualifies to state a claim under these criteria: a September 8, 2020 non-selection for a vice principal position. Dkt. No. 9 ¶¶ 46, 50, 54. This non-selection occurred one month and five days after Plaintiff filed his August 3, 2020 EEOC charge. Unlike the other instances of protected activity, Glynn County Schools was actually aware of the EEOC charge. Plaintiff, therefore, establishes a Title VII retaliation claim only for this September 8, 2020 non-selection. Defendant's partial motion to dismiss Plaintiff's Title VII retaliation claim for this non-selection is **DENIED.** Because Plaintiff fails to allege a causal

relationship between the other instances of protected activity and his other non-selections, Defendant's motion is **GRANTED** as to all other non-selections.

## II.  Plaintiff's 42 U.S.C. § 1981 Claims

### A. An Overview of Section 1981

Like Title VII, Section 1981 prohibits race discrimination in employment. 42 U.S.C. § 1981. Congress originally enacted 42 U.S.C. § 1981 as § 1 of the Civil Rights Act of 1866, 14 Stat. 27. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 372–73 (2004) (providing a history of Section 1981). As first enacted, Section 1981 provided that "all persons [within the jurisdiction of the United States] shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 14 Stat 27. In 1991, Congress expanded Section 1981's coverage, defining the term "make and enforce contacts" to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); see also Jones, 541 U.S. at 373.

"Both Title VII and Section 1981 have the same burden of proof and use an identical analytical framework." Poer v. Jefferson Cnty. Comm'n, 100 F.4th 1325, 1336 (11th Cir. 2024) (citation omitted). A Section 1981 plaintiff may also use temporal proximity to establish causation for retaliation subject to the same

requirements as Title VII. See Berry v. Crestwood Healthcare LP,
84 F.4th 1300, 1306–10 (11th Cir. 2023).

The statute of limitations applicable to Section 1981 claims
depends on which portion of the statute a plaintiff relies upon to
support his claim. To begin, Section 1981 does not include its own
statute of limitations provision. 42 U.S.C. § 1981. When Section
1981 was enacted, courts applied "the most appropriate or analogous
state statute of limitations." Grimes v. Bd. of Regents of the
Univ. Sys. of Ga., 650 F. App'x 647, 651 (11th Cir. 2016) (internal
quotation marks omitted) (quoting Jones, 541 U.S. at 371). In
Georgia, that would be the two-year statute of limitations for
personal injury actions. Id. However, with the enactment of 28
U.S.C. § 1658 in 1990, actions arising under federal statutes
enacted after December 1, 1990 were provided a catch-all four-year
statute of limitations. Said another way, "causes of action that
were not available until after [Section] 1658 was enacted" enjoy
the four-year statute of limitations. Jones, 541 U.S. at 382. So,
in Georgia, if a plaintiff's claim is cognizable under Section
1981 as it existed prior to the 1991 amendment, a two-year statute
of limitations applies to his claims. Grimes, 650 F. App'x at 651.
On the other hand, if a plaintiff's Section 1981 claim is
cognizable only under the language provided by the 1991 amendment
to the statute, the claim is subject to Section 1658's four-year
statute of limitations. Jones, 541 U.S. at 382–83.

**B. Analysis**

The parties agree that Plaintiff's Section 1981 claims arise under the pre-1991 version of the statute and that Georgia's two-year statute of limitations applies. See Dkt. No. 27. The parties also agree that Plaintiff's Section 1981 claims (as alleged in Counts III and IV) "arising out of alleged adverse employment actions prior to October 3, 2021, shall be dismissed as barred by the applicable two-year statute of limitations." Id. at 1. Therefore, Defendant's partial motion to dismiss Plaintiff's Section 1981 retaliation claim for all non-selections that occurred before October 3, 2021 is **GRANTED**.

Having addressed Defendant's statute-of-limitations argument for dismissal for pre-October 3, 2021 non-selections, the Court now turns to Defendant's causation argument for all non-selections that occurred after October 3, 2021. For the same reasons described in Section I.B., Plaintiff's September 8, 2020 non-selection is the only viable adverse employment action that can establish a Section 1981 retaliation claim. That is, the September 8, 2020 non-selection is the only adverse action for which Plaintiff has alleged temporal proximity and Defendant's knowledge of protected activity to sufficiently plead causation. That said, Plaintiff's Section 1981 retaliation claim for this September 8, 2020 non-selection is, nevertheless, barred by the statute of limitations, as discussed supra. There being no other viable non-selections to

23

state a retaliation claim under Section 1981, Defendant's partial motion to dismiss Plaintiff's Section 1981 retaliation claim as to causation for all non-selections that occurred after October 3, 2021 is also **GRANTED**.

## CONCLUSION

For these reasons, Defendant Glynn County Schools' partial motion to dismiss, dkt. no. 11, is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** as to Plaintiff's Title VII retaliation claim (Count II) arising from his September 8, 2020 non-selection. The motion is **GRANTED** as to all other claims (Title VII retaliation claim (Count II) arising from all adverse employment actions except the September 8, 2020 non-selection; and 42 U.S.C. § 1981 claims (Counts III and IV)), which are therefore **DISMISSED with prejudice**. Count I of the amended complaint was not included in the partial motion to dismiss. Count I remains pending as well.

**SO ORDERED** this 19th day of August, 2024.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA